IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | |
|---|---|
| VICTOR D'ALFONSO, | Case No. 1:21-cv-280 |
| Plaintiff | RICHARD A. LANZILLO<br>Chief United States Magistrate Judge |
| v. | Memorandum Opinion on Defendants'<br>Motion for Summary Judgment |
| SRGT. REDDINGER, et al., | ECF No. 35 |
| Defendants | |

I. Introduction

Plaintiff Victor D'Alfonso, an inmate formerly incarcerated[1] at the State Correctional Institution at Forest (SCI-Forest), initiated this *pro se* civil rights action by filing a civil complaint and a motion for leave to proceed in forma pauperis (IFP). ECF Nos. 1, 1-1. After the Court granted D'Alfonso's IFP motion, he filed an amended complaint – the currently operative pleading – on March 29, 2022. ECF No. 21. In addition to alleging that employees at SCI-Forest violated his Eighth Amendment right to be free from cruel and unusual punishment, D'Alfonso asserted state law tort claims of assault and battery. ECF No. 21 at 7. D'Alfonso named four corrections officers as Defendants: Reddinger, Slater, Mahoney, and Manilla. *Id.* at 2-3.

On August 5, 2022, the Court dismissed D'Alfonso's state tort claims, official capacity claims, and Eighth Amendment conditions of confinement claims. ECF No. 27. The remaining

---

[1] Plaintiff has since been transferred to SCI Pine Grove.

two claims – an Eighth Amendment excessive force claim, and an Eighth Amendment failure to protect claim – proceeded to discovery.

Defendants now move for summary judgment on each of those claims. In conjunction with their motion, Defendants have filed a supporting brief, concise statement of material facts, and appendix of exhibits. ECF Nos. 35-38. Following several extensions, D'Alfonso filed a brief in opposition and a responsive concise statement. ECF Nos. 41, 50. This matter is ripe for adjudication.[2]

II. Factual background

A. Local Rule 56.C.1

Before summarizing the pertinent facts, the Court notes that D'Alfonso has failed to respond properly to Defendants' concise statement of material facts, as required by Local Rule 56.C.1. This rule requires a party responding to a motion for summary judgment to file a responsive concise statement in which he must: respond to each numbered paragraph in the movant's concise statement; admit or deny the facts contained in the movant's concise statement; set forth the factual basis, with appropriate citation to the record, for denial of any fact that is not fully admitted by the non-moving party; and set forth, in separately numbered paragraphs, any other material facts upon which the moving party relies in opposition to the motion. *See* LCvR 56.C.1. Courts in the Western District of Pennsylvania require strict compliance with the provisions of Local Rule 56. *See, e.g., Coleman v. Tice*, 2018 WL 5724125, at *2 n. 3 (W.D. Pa. Oct. 10, 2018), adopted by 2018 WL 5722316 (W.D. Pa. Nov. 1, 2018); *First Guard Ins. Co. v.*

---

[2] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

*Bloom Services, Inc.*, 2018 WL 949224, at *2-3 (W.D. Pa. Feb. 16, 2018); *Hughes v. Allegheny County Airport Authority*, 2017 WL 2880875, at *1 (W.D. Pa. July 6, 2017).

The responsive document filed by D'Alfonso at ECF No. 50 only partially complies with the Local Rule. While he appropriately responded to each of Defendants' factual averments by admitting or denying that fact in a numbered paragraph, he failed to "set forth the basis for denial of any fact within the movant's concise statement is not entirely admitted by the non-moving party, *with appropriate citation to the record*." *See* LCvR 56.C.1 (emphasis added). Without the requisite citations, the Court cannot determine whether any of D'Alfonso's denials are properly grounded in the evidentiary record.

A non-moving party "faces severe consequences for not properly responding to a moving party's concise statement." *Hughes*, 2017 WL 2880875, at *1. Any alleged material facts "set forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56.E. While courts provide some leniency to *pro se* litigants when applying procedural rules, the Court "'is under no duty to provide personal instruction on courtroom procedure or to perform any legal chores for the [pro se litigant] that counsel would normally carry out.'" *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004)). Nor may *pro se* litigants ignore procedural rules that apply to parties assisted by counsel. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (explaining that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

Accordingly, to the extent that D'Alfonso has failed to properly respond to any concise statement of material fact, that concise statement of material fact will be deemed admitted. LCvR 56.E. However, the Court will consider any facts properly alleged in D'Alfonso's pro se responses that specifically contradict Defendants' statement of facts, to the extent that they are supported by the record. *Boyd v. Citizens Bank of Pa., Inc.*, 2014 WL 2154902, at *3 (W.D. Pa. May 22, 2014) (stating that "[t]o the extent Plaintiff's statement of 'fact' specifically controverts Defendant's, the Court will consider these facts in determining whether summary judgment should be granted").

B. Material Facts

The following factual summary is derived primarily from D'Alfonso's amended complaint, Defendants' concise statement of material facts, and the exhibits attached thereto. According to the official investigative report of the incident, a non-Defendant corrections officer was collecting meal trays on January 23, 2020, when D'Alfonso's cellmate, Merritt Dudas, demanded to be seen by the prison's Program Review Committee (PRC). ECF No. 37 ¶ 3. When the officer informed Dudas that PRC had left the unit already, Dudas took control of the wicket[3] in his cell door with both of his arms and refused orders to remove them. *Id.* ¶ 4. The officer then notified unit control of the situation. *Id.* ¶ 5.

Defendants Reddinger and Slater were the first to respond. *Id.* ¶ 6. Upon arriving at the cell, they observed that a mattress had been pushed through the wicket, preventing it from being secured. *Id.* ¶ 6. They ordered D'Alfonso and Dudas to remove the mattress but neither complied. *Id.* ¶ 7. Reddinger and Slater then attempted to pull the mattress through the wicket. *Id.* ¶ 8. During this attempt, Dudas reached through the wicket and grabbed Reddinger's wrist,

---

[3] The "wicket" is a small opening in the cell door used to pass food in and out of the cell.

4

pulling him partially through the wicket. *Id.* ¶ 9. He also attempted to grab Slater's hand. *Id.* In response, Reddinger deployed a short burst of oleoresin capsicum spray (OC) spray. *Id.* ¶ 10. Additional officers then arrived on the scene and successfully removed the mattress. *Id.* ¶ 11. Eventually, both inmates were secured and escorted to triage for medical treatment and decontamination. *Id.* ¶ 13.

According to D'Alfonso, after arriving at triage, Slater removed his gas mask, stated "I hate that fucking spray, D'Alfonso," and punched him three times in the ribs while he was still handcuffed. ECF No. 21 ¶ 22. Reddinger "stood by and watched" but failed to intervene. *Id.* ¶ 23. When the nurse arrived, D'Alfonso refused treatment for fear of retaliation. *Id.* ¶ 24. Defendants deny that any of this occurred. *See* ECF No. 37 ¶ 14.

In addition to the parties' respective accounts, the record contains security footage of the portion of the incident that occurred at D'Alfonso's cell. ECF No. 38-2. Unfortunately, the video does not capture most of the relevant events. At the start of the video, a cell door can be observed with a mattress pushed through the wicket. Two corrections officers are standing near the door, coughing, and an individual inside the cell can be heard shouting about the use of OC spray. From these reactions, it appears that Slater's deployment of OC spray occurred prior to the arrival of the officer with the camera. Shortly after, officers remove the mattress from the wicket and secure the cell door. D'Alfonso allows himself to be cuffed and is escorted from the cell. However, the camera remains at the cell, focused on Dudas. Consequently, it does not capture the alleged punches thrown by Slater while escorting D'Alfonso to triage.

III. Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is

5

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those

elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

IV. Analysis

D'Alfonso asserts that each of the Defendants violated his Eighth Amendment right to be free of cruel and unusual punishment by either utilizing excessive force or by failing to protect him from the use of excessive force by others. Two uses of force are at issue: 1) Reddinger's deployment of OC spray; and 2) Slater's attack while escorting D'Alfonso to triage.

A. Excessive force

In an excessive force claim, the "core judicial inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In *Whitley v. Albers*, the United States Supreme Court articulated several factors for courts to consider in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312 (1986)).

Where the events at issue have been captured on videotape, the court must consider the videotaped evidence in determining whether there is any genuine dispute as to material facts. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007). The court must view the facts in the light

depicted by the videotape. *See id.* (relying on a videotape in assessing summary judgment evidence and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape."). If a review of the videotape "refutes an inmate's claims that excessive force was used against him, and the video evidence does not permit an inference that prison officials acted maliciously and sadistically, summary judgment is entirely appropriate." *Smalls v. Sassaman*, 2019 WL 4194211, at *8 (M.D. Pa. Sep. 4, 2019) (citing *Tindell v. Beard*, 351 Fed. Appx. 591 (3d Cir. 2009)). *See also McCullon v. Saylor*, 20134 WL 1192778, at *14 (M.D. Pa. Mar. 4, 2013) ("[I]n assessing . . . claims in a case where an encounter is captured on videotape we are mindful of the fact that when 'videotape refutes [an inmate's] assertion that defendant[s] used excessive force,' or when the 'video shows that [an inmate] did not suffer any physical distress' . . . we should conclude 'viewing the evidence in the light most favorable to [the inmate that], no reasonable finder of fact could view the video of the incident and determine that [defendants] acted maliciously and sadistically,' and may enter summary judgment on the excessive force claim.") (quoting *Tindell*, 351 Fed. Appx. at 596).

In D'Alfonso's case, there are two distinct applications of force at issue. The first concerns Reddinger's use of OC spray to compel Dudas to obey orders and remove his mattress from his cell wicket. The second occurred when officers were escorting D'Alfonso to the medical triage room. Each will be analyzed separately.

1. OC spray

There is no question that the deployment of OC spray represents a use of force. Consequently, the Court must consider each of the *Whitley* factors to determine whether that force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.

8

Regarding the first factor, some application of force was clearly necessary. Prior to the deployment of OC spray, D'Alfonso's cellmate shoved his mattress through the cell door wicket, refused orders to remove it, and grabbed the arms of two security officers. For the safety of both the officers and the inmates, as well as the need to restore order and discipline, this provided adequate justification for the use of OC spray. *See, e.g., Martin v. Wetzel*, 2021 WL 2926005, at *9 (W.D. Pa. July 12, 2021) (finding the use of OC spray necessary where the plaintiff "had covered the windows of his cell with a sheet" and "refused six orders . . . to come to the cell's door, uncover it, and cuff up."); *Jones v. Wetzel*, 2017 WL 4284416, at *7–9 (W.D. Pa. Sept. 27, 2017) (granting summary judgment on excessive force claim where officer used OC spray when inmate covered his cell window and refused multiple orders to uncover it). This factor supports summary judgment.

The second factor to consider is the relationship between the need for force and the amount of force used. The reasonableness of a particular use of force must be assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Notably, courts have widely upheld the reasonableness of using OC spray "to effectuate removing a prisoner from his cell when the inmate has refused multiple orders to come to the door to submit to handcuffing." *Martin*, 2021 WL 2926005, at *10. *See also Easley v. Tritt*, 2021 WL 978815, at *15 (M.D. Pa. Mar. 16, 2021) (use of OC spray necessary to gain compliance when inmate ignored several orders to come to his cell's door and submit for handcuffing); *Jones*, 2017 WL 4284416, at *7–10 (officer's use of OC spray was reasonable when inmate would not return items from his cell, covered his cell window, and refused multiple orders to uncover it). Consequently, this factor also weighs in favor of summary judgment.

The third *Whitley* factor considers the extent of the injury inflicted. While the lack of significant injury weighs against an excessive force claim, it is not dispositive. *Aruanno v. Maurice*, 2019 WL 5597653, at *2 (3d Cir. Oct. 30, 2019); *Wilkins v. Gaddy*, 559 U.S. 34, 38) (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). Here, D'Alfonso has failed to adduce any evidence indicating that he sustained serious or lasting injuries from his brief exposure to pepper spray. *See*, *e.g.*, *Gibson v. Flemming*, 837 Fed. Appx. 860, 862 (3d Cir. 2018) ("temporary discomfort" from OC spray did not support a constitutional violation). This factor decidedly favors summary judgment.

The fourth factor the Court must consider is the extent of the threat and the safety of staff and inmates, as reasonably perceived by the responsible officials based on the facts known to them. *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009). As noted above, there is no question that Dudas ultimately needed to be restrained and secured for the purpose of restoring order and discipline. *See Johnson v. Clarke*, 2022 WL 2835706, at *4 (W.D. Pa. June 2, 2022) ("[E]ven if Clarke could have initially moved away from Johnson's cell to avoid his attacks, Johnson eventually needed to be restrained and secured"). Nothing in the record suggests that he would have ceased his disobedient and disruptive behavior without the deployment of pepper spray. Moreover, the Court of Appeals for the Third Circuit has found the controlled use of pepper spray appropriate, even if there is no immediate security threat, where an inmate repeatedly refuses to follow a corrections officer's direct commands. *See Passmore v. Ianello*, 528 Fed. Appx. 144 148 (3d Cir. 2013) (use of pepper spray was reasonable under the circumstances when inmate repeatedly refused officers' orders to present himself for a mandatory shower). While D'Alfonso does not appear to have been actively involved in the disorderly conduct at issue here,

his cellmate's disruptive behavior and refusal to follow orders rendered Defendants' response objectively reasonable under the circumstances.

Finally, the Court considers whether Defendants made any efforts to temper the severity of the forceful response. Defendants aver that they gave Dudas and D'Alfonso several direct orders to remove the mattress before deploying OC spray. ECF No. 37 ¶¶ 7-8. D'Alfonso denies that any such orders were given. ECF No. 21 ¶ 14. There is nothing in the record, including the video footage, to corroborate either of the parties' accounts in this regard. Nevertheless, given the strength of the remaining *Whitley* factors, any factual dispute concerning this factor is ultimately immaterial.

In summary, the Court concludes that overwhelming evidence supports a finding in Defendants' favor as to four of the five of the *Whitley* factors. Even viewing the evidence of record, including the video recording, in the light most favorable to D'Alfonso, no reasonable jury could conclude that Defendants' use of OC spray amounted to excessive force. Defendants' motion for summary judgment should be granted as to this claim.

2. Physical force

In addition to the use of OC spray, D'Alfonso claims that Slater punched him in the ribs three times while escorting him to medical triage, "inflicting physical pain and mental anguish." ECF No. 41 at p. 2. D'Alfonso avers that he was handcuffed and fully compliant with orders at the time of the attack. He maintains that he "suffers a constant wheezing in his breathing" and "pain in his side" because of the attack. *Id.* Slater denies striking D'Alfonso. The interaction was not captured on videotape. Consequently, the parties' divergent accounts reflect a genuine dispute regarding a material fact, i.e., whether the challenged use of force took place.

Should a jury accept D'Alfonso's testimony that Slater attacked him in the manner described, it could also reasonably conclude that Slater's unprovoked actions amounted to excessive force. Indeed, courts have routinely denied summary judgment in situations where a restrained inmate is gratuitously assaulted without provocation. *See, e.g., Martin v. Secretary of Corrections*, 2022 WL 1576758, at *2 (3d Cir. 2022) ("[A] fact finder who believed [inmate's] statements and supporting affidavits that he was struck repeatedly while restrained could conclude that the force allegedly used was excessive under the circumstances."); *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) ("Punching and kicking someone who is handcuffed behind his back and under the control of at least six prison guards . . . is 'repugnant to the conscience of mankind,' absent the extraordinary circumstances necessary to justify that kind of force."). The same outcome is warranted here.

B. Failure to protect

The Eighth Amendment of the United States Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). This includes the general duty to "protect prisoners from violence at the hands of other[s]." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). To survive summary judgment on a failure-to-protect claim, the plaintiff must adduce evidence suggesting that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that substantial risk; and (3) the defendant's deliberate indifference caused the plaintiff to suffer harm. *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). The standard for deliberate indifference is subjective; thus, the prison official "must actually have known or been

aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

As an initial matter, D'Alfonso's claim against Slater, Mahoney, and Manilla[4] for failing to prevent Reddinger from deploying OC spray is objectively meritless. This is because, "[i]f there is no excessive force, there is no corresponding duty to intervene." *Grubbs v. Marconi*, 237 F.Supp.3d 181, 189 (D. Del. 2017). *See also Nifas v. Coleman*, 528 Fed. Appx. 132, 135-36 (3d Cir. 2013) ("Because we find that no constitutional violation occurred with respect to excessive force, Nifas also cannot succeed on his failure to intervene claims."). Because the Court has already determined that Reddinger's use of OC spray was appropriate, D'Alfonso cannot establish that any of the other Defendants violated the Constitution by failing to intervene.

As to the punching incident, D'Alfonso contends that Reddinger violated the Constitution by failing to prevent Slater's attack. In *Smith v. Mensinger*, the Court of Appeals for the Third Circuit held that "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." 293 F.3d 641, 650 (3d Cir. 2002). Critically, however, "an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* Factors to consider in determining whether an officer had a reasonable opportunity to intervene include: "the temporal length of the alleged assault, the proximity of the non-intervening officer to the alleged assault, [and] the ability of the non-

---

[4] It is somewhat unclear what claims D'Alfonso is asserting against Manilla and Mahoney. Aside from noting that they were present at his cell and "laughed" at him after OC spray was deployed, D'Alfonso does not attribute any relevant conduct to either Defendant. *See, e.g., Gould v. Wetzel*, 2013 WL 5697866, at *2 (3d Cir. Oct. 21, 2013) (noting that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right).

intervening officer to perceive and/or hear the alleged assault, among others." *Kenney v. City of Pittsburgh*, 2014 WL 789082, at *4 (W.D. Pa. Feb. 26, 2014) (internal quotations and quoting sources omitted).

The application of these factors to the instant case requires the Court to grant Defendants' motion for summary judgment. Initially, the Court notes that D'Alfonso has made no attempt to adduce any factual support for this claim. The only reference in the record to Reddinger's alleged failure to protect D'Alfonso is his general averment that Reddinger "stood by and watched [the incident] occur with a clear chance to intervene which he failed to do." ECF No. 21 ¶ 23. This legal conclusion is insufficient to create a triable issue of material fact as to whether Reddinger had a reasonable opportunity to intervene.

Moreover, the record belies D'Alfonso's conclusory allegation. The incident described by D'Alfonso – a quick series of punches to the ribs – is precisely the type of brief and spontaneous attack that provides attending officers with a limited opportunity to intervene. There is nothing in the record indicating that Slater announced his intentions in advance or engaged in a prolonged attack. Rather, D'Alfonso states only that Slater removed his mask, declared that he hated OC spray, and "then proceeded to punch [D'Alfonso] three (3) times in the ribs." ECF No. 21 ¶ 22. Under the facts alleged, no reasonable finder of fact could conclude that Reddinger had a "realistic and reasonable opportunity to intervene." *Hartfelder v. New Jersey State Police*, 2019 WL 3072252, at *9 (D. N.J. July 15, 2019) (holding that a two second interval between officer's threat and subsequent use of force provided no realistic or reasonable opportunity to intervene). *See also Rawlings v. Se. Pennsylvania Transportation Auth.*, 2022 WL 15525755, at *7 (E.D. Pa. Oct. 27, 2022) (granting summary judgment where officers who witnessed an excessive use of force "would have had a few split seconds, if that, to intervene in

the other's use of force. That is not a realistic amount of time such that they should have been expected to intervene."); *Ewing v. Cumberland Cnty.*, 152 F. Supp. 3d 269, 309–10 (D.N.J. 2015) ("The evidence of record describes an instantaneous, perhaps impulsive shove by Ciangaglini, to which Day was only a witness. Even if Day had wanted to intervene, the evidence is insufficient as a matter of law to show that he had any opportunity to do so."); *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir.1988) (finding no liability where blows were struck too quickly for an officer to intercede).

V.   Conclusion

For the reasons stated herein, Defendants' motion for summary judgment [ECF No. 35] is granted in part and denied in part. Defendants' motion is granted as to D'Alfonso's failure to protect claim and his excessive force claim against Reddinger, Mahoney, and Manilla. Defendants' motion is denied as to D'Alfonso's excessive force claim against Slater based on the allegedly unprovoked punches thrown while escorting him to triage.

_____
RICHARD A. LANZILLO
Chief United States Magistrate Judge

Dated: September 25, 2023